# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LISA S. BELL,

Plaintiff,

v.

MCNEIL & MEYERS ASSET MANAGEMENT GROUP, LLC, et al.,

Defendants.

Case No. 1:26-cv-02526-KES-SAB

ORDER SCREENING COMPLAINT AND GRANTING LEAVE TO FILE AMENDED COMPLAINT

(ECF No. 1)

**THIRTY-DAY DEADLINE**

On April 3, 2026, Plaintiff Lisa S. Bell, who is proceeding *pro se* and *in forma pauperis*, filed a complaint against Defendants McNeil & Meyers Asset Management Group, LLC, Manny Villegas, and Jeff Hurley. (ECF No. 1.) The Court granted Plaintiff's application to proceed *in forma pauperis* with the notice that service would not be undertaken until the Court screened the complaint in due course. (ECF Nos. 3.) The Court now undertakes its screening.

**I.**

**SCREENING REQUIREMENT**

The *in forma pauperis* statute provides that a court shall dismiss a case if, *inter alia*, the complaint is frivolous or malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). In determining whether a complaint fails to state a claim, a court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."

Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

Moreover, federal courts are under a duty to raise and decide issues of subject matter jurisdiction *sua sponte* at any time it appears subject matter jurisdiction may be lacking. Fed. R. Civ. P. 12; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). If the Court determines that subject matter jurisdiction is lacking, the Court must dismiss the case. Id.; Fed. R. Civ. P. 12(h)(3).

Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is Lisa S. Bell, who resides in Fresno, California. (ECF No. 1, p. 3.)[1] Defendant McNeil & Meyers Asset Management Group, LLC ("M&M") is a "Louisiana limited liability company" with its principal place of business in "Harahan, LA." (Id.) Defendants Manny Villegas ("Villegas") and Jeff Hurley ("Hurley"), upon information and belief, are "a principal, manager, and/or controlling person[s]" of M&M. (Id.) As a summary, Plaintiff alleges that Defendants engaged in a systematic pattern of illegal debt collection practices, including: (a) failing to validate a disputed debt; (b) failing to provide an assignment contract proving their

[1] For clarity, the Court cites to the actual PDF page number. Though Plaintiff has utilized paragraph numbers, the numbers reset in each section.

authority to collect; (c) failing to provide a detailed accounting of the alleged debt; (d) continuing to report the debt after receiving notice of dispute; (e) ignoring Plaintiff's written cease and desist demand; (f) ignoring Plaintiff's demand for written communication; and (g) causing Plaintiff actual financial harm, including a higher interest rate on an automobile loan, a $500 down payment, and nine hard inquiries on her credit report—all of which would not have been required but for Defendants' illegal conduct. (Id. at p. 2.) In particular, Plaintiff focuses on two communications: 1) an instruction by M&M for Plaintiff to "'call Manny' (referring to Mr. Villegas) rather than providing written validation;" and 2) a letter dated October 3, 2025, from Hurley "refusing to delete the disputed debt." (Id. at p. 4.)

Plaintiff alleges that on or about May 30, 2025, Plaintiff co-signed an agreement with All Pro Bail Bonds for the benefit of Plaintiff's son. (Id.) One of the conditions of the surety bail bond states, "The obligation under this agreement is joint and severable." (Id.) At some point, Defendants began reporting a debt of $1,140 on Plaintiff's credit report as Account # U29538, and this debt is still reported as a collection account on Plaintiff's credit report. (Id.)

On August 21, 2025, Plaintiff filed a complaint with the Consumer Financial Protection Bureau, "disputing the debt and demanding validation under [Fair Debt Collection Practices Act ("FDCPA")] § 1692g, including: [t]he original contract with All Pro Bail Bonds; [t]he assignment contract proving Defendants' authority to collect; [a] detailed accounting of the $1,140; [and] [p]roof the debt is within the statute of limitations." (Id. at p. 5.) Plaintiff also demanded that Defendants cease all communication with Plaintiff except to provide validation, pursuant to FDCPA § 1692c(c). (Id.) Specifically, Plaintiff stated:

> Pursuant to 15 U.S.C. § 1692c(c), I demand that you immediately cease all communication with me regarding this alleged debt, except as required by law to provide the requested validation or to confirm that collection efforts have ceased. This includes, but is not limited to, ceasing all phone calls, letters, or other forms of contact.

(Id.)

On August 26, 2025, Defendants responded to the dispute, providing the All Pro Bail Bonds contract. (Id.) However, Defendants failed to provide the assignment contract proving

their authority to collect, a detailed accounting of the $1,140, and proof the debt was within the statute of limitations. (Id.)

On August 28, 2025, Plaintiff filed a second complaint with the Consumer Financial Protection Bureau, "demanding that Defendants cease reporting the unverified debt to credit bureaus. Plaintiff cited FDCPA § 1692e(8) and FCRA § 1681s-2(b) as the basis for her demand." (Id. at p. 6.)

On August 29, 2025, Defendants responded by "resending the same inadequate documents and instructing Plaintiff to 'call Manny directly" at a phone number provided. (Id.) Plaintiff again alleges that this "Manny" is Manny Villegas, the Defendant sued herein. (Id.) According to Plaintiff, "Defendants ignored Plaintiff's demand for written communication and instead directed her to call a company principal, demonstrating bad faith." (Id.)

On October 2, 2025, Plaintiff filed a third complaint with the with the Consumer Financial Protection Bureau, "reiterating her demand for removal due to imminent financial harm from an upcoming car purchase." (Id.) On October 3, 2025, Defendants sent Plaintiff a letter signed by Hurley, identifying himself as a "Sr. Asset Recovery Manager." (Id.) In the letter, Hurley admitted to receiving Plaintiff's credit bureau dispute, claimed to have verified that the debt was valid after reviewing with the creditor, refused to remove the debt account, and invited Plaintiff to "call us at your convenience." (Id. at p. 7.) "Defendants sent Plaintiff a packet of documents that included the Conditions of Surety Bail Bond, payment history, and application. This packet contained the original bail bond agreement showing the debt was JOINT AND SEVERAL. However, Defendants FAILED TO PROVIDE the assignment contract proving their authority to collect." (Id.)

Plaintiff alleges that to date, Defendants still report this debt as a collection account on Plaintiff's credit report, which has affected Plaintiff's credit report. (Id.) On March 9, 2026, Plaintiff sent a "final demand letter" to Defendants demanding deletion of the account and $25,000 in damages. (Id. at p. 8.) On that same date, Plaintiff purchased a vehicle and alleges that she was forced to accept a financing plan that will now require her to pay over $10,000 in interest that should would not have had to pay with her previous credit score. (Id. at p. 9.) In

support of her complaint, Plaintiff has provided extensive exhibits and citations to cases involving M&M. (Id. at pp. 9-11.)

On April 3, 2026, Plaintiff commenced this action bringing seven causes of action: 1) failure to validate, 15 U.S.C. § 1692g(b); 2) false or misleading representation, 15 U.S.C. § 1692e; 3) unfair practices, 15 U.S.C. § 1692f; 4) failure to cease communication, 15 U.S.C. § 1692c(c); 5) failure to investigate, 15 U.S.C. § 1681s-2(b); willful noncompliance, 15 U.S.C. § 1681n; and 7) violation of the Rosenthal Act, Cal. Civ. Code § 1788, *et seq*. (Id. at pp. 11-15.) Plaintiff seeks actual damages in the amount of $16, 921 and punitive damages in the amount of $20,000. (Id. at p. 15.)

## III.

## DISCUSSION

### A. Validation of Debts, 15 U.S.C. § 1692g(b)

Title 15 U.S.C. § 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, ***or the name and address of the original creditor***, and a copy of such verification or judgment, ***or name and address of the original creditor***, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Id. (emphasis added).

For her first claim, Plaintiff alleges that Defendants violated 15 U.S.C. § 1692g by failing to provide an assignment contract, a detailed accounting, and proof that the debt is within the statute of limitations. However, the § 1692g undermines this conclusion. The statute states that when a debt is disputed, a debt collector shall cease collection of the debt until the debt collector

obtains verification, a copy of a judgment, or the name and address of the original creditor, which then must be mailed to consumer. Per Plaintiff's own allegations and exhibits, Defendants provided Plaintiff with the name and address of the original creditor: All Pro Bail Bonds. According to Plaintiff, Defendants even provided Plaintiff with the contract that she signed with All Pro Bail Bonds. Title 15 U.S.C. § 1692g(b) requires nothing more.

For these reasons, the Court finds that Plaintiff has not stated a claim under 15 U.S.C. § 1692g(b).

**B. False or Misleading Representations, 15 U.S.C. § 1692e**

Title 15 U.S.C. § 1692e, in relevant part, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt;
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Id.

The Court finds that Plaintiff has failed to allege facts to support a claim under § 1692e. Plaintiff does not deny that she entered into a contract with All Pro Bail Bonds, nor are there any allegations that she has paid off the debt or that the debt was otherwise satisfied. Thus, the reporting of the existence of the debt to Plaintiff is not a false representation. Though Plaintiff disputed her debt, Plaintiff has, in reality, alleged Defendants complied with 15 U.S.C. § 1692g(b), including providing a communication that the debt was verified. Finally, directing Plaintiff to "call Manny" is not a use of false representation or deceptive means to collect debt. Rather, the Court finds many of Plaintiff's allegations to be conclusory.

For these reasons, the Court finds that Plaintiff has not stated a claim under 15 U.S.C. §

1692e.

**C. Unfair Practices, 15 U.S.C. § 1692f**

Title 15 U.S.C. § 1692f provides, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Examples include the collection of any amount not subject to the agreement creating the debt; solicitation by a debt collector of any post-dated check for the purpose of threatening or instituting criminal prosecution, and communicating with a consumer regarding a debt by post card. Id. at §§ 1692f(1), (3), (7). Plaintiff does not explain or connect the allegations she has made that any of Defendants' actions would be unfair practices as defined under 15 U.S.C. § 1692f. For this reason, the Court finds that Plaintiff has not stated a claim under 15 U.S.C. § 1692f.

**D. Communication in Connection with Debt Collection, 15 U.S.C. § 1692c(c)**

Title 15 U.S.C. § 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Id.

The Court finds that Plaintiff has alleged that on August 21, 2025, Plaintiff sent Defendants a written cease and desist demand pursuant to § 1692c(c), instructing them to cease all communication except to provide validation. Plaintiff directs the Court to three instances where Plaintiff alleges Defendants violated § 1692c(c).

First, Plaintiff cites to the October 3, 2025 letter from Hurley. This theory fails. The letter,

which Plaintiff has incorporated as Exhibit K, is dated October 3, 2025, and is in response to Plaintiff's credit bureau dispute. The letter states:

> After reviewing the account documents with the creditor we have verified that the debt is valid. Please review the documents concerning your account. You may contact us with any questions you may have. The account will remain on your credit file up to seven years as allowed by law. After your review if you would like to work out a solution to settle this matter please call us at your convenience so we may assist you with your credit file.

(ECF No. 1, p. 104.) The Court finds that Hurley's letter was responsive to Plaintiff's credit bureau dispute and indeed provides verification of Plaintiff's debt, which Plaintiff had requested.

Second, Plaintiff cites to Defendants continuing to report debt to credit bureaus. The Court finds that § 1692c(c) does not apply to this type of communication. Rather, it covers communications between a consumer and debt collector.

Third, Plaintiff cites to Defendants instructing Plaintiff to "call Manny" rather than honor her written-only communication request. Again, this is not covered under § 1692c(c). Plaintiff cites to no other statute or precedent that a debt collector must communicate in writing only based on a consumer's preference; in any event, that is what occurred by Plaintiff's own allegations (*i.e.*, the communication directing Plaintiff to call Manny was *in writing*). (ECF No. 1, p. 28.) That Defendants gave Plaintiff another option of communication is not a violation of § 1692c(c).

For these reasons, the Court finds that Plaintiff has not alleged a claim under 15 U.S.C. § 1692c(c).

**E. Responsibilities of Furnishers of Information to Consumer Reporting Agencies, 15 U.S.C. § 1681s-2(b).**

Title 15 U.S.C. § 1681s-2(b) provides, "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall" conduct an investigation with various statutory requirements. Id.

Plaintiff states that Defendants violated § 1681s-2(b) by failing to conduct a reasonable investigation after receiving Plaintiff's disputes, including reviewing any assignment contract between All Pro Bail Bonds and Defendants. The Court finds Plaintiff's allegations to be largely

conclusory. Plaintiff has not alleged that Defendants received notice under § 1681i(a)(2). Moreover, at no time has Plaintiff disputed that she was not liable to the debt at issue or that the debt was otherwise satisfied. For these reasons, the Court finds that Plaintiff has not stated a claim under § 1681s-2(b).

**F. Civil Liability for Willful Noncompliance, 15 U.S.C. § 1681n**

The Court notes that 15 U.S.C. § 1681n is the legal mechanism that allows for a private right of action for consumers. In other words, 15 U.S.C. § 1681n is the statute that provides that a consumer may bring a civil action and outlines the damages such a consumer may seek. Thus, § 1681n does not otherwise provide a basis for a claim.

**G. Compliance with Federal Provision, Cal. Civ. Code § 1788.17**

California Civil Code § 1788.17 provides:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

Id.

The Court takes Plaintiff's position that by violating the FDCPA, Defendants have violated California's state-law counterpart, the Rosenthal Act. However, for the reasons articulated above, the Court found that Plaintiff has failed to state any claim under the FDCPA. In addition, the citation to § 1788.17 appears to be a statute incorporating compliance with Title 15. Plaintiff has not cited to statute or other authority, or otherwise alleged, how the Rosenthal Act provides a private right of action that would allow for enforcement of violations of federal compliance. For these reasons, the Court finds that Plaintiff has failed to allege a Rosenthal Act violation.

**H. Joint and Several Liability in California**

Based on the allegations in the complaint, there appears to be some confusion on what "joint and several liability" means. For Plaintiff's benefit, the Court will briefly outline the

concept below.

"At common law, when multiple parties promised the same performance, they were presumed to be jointly obligated absent a clear indication otherwise." DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 820 (Cal. 2015), citing Farmers' Exchange Bank v. Morse, 129 Cal. 239, 243, 61 P. 1088 (Cal. 1900). "A joint and several contract is considered to be a contract that is made both separately with each promisor and jointly with all the promisors." Id. "Parties to a joint and several contract are thus bound jointly, so that they are liable for the entire obligation, and severally, so that each may be sued separately for the entire loss." Id.

**I. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

The Court finds leave to amend is warranted. At this time, Plaintiff has not demonstrated undue delay, bad faith, or dilatory motive. Accordingly, the Court will allow Plaintiff leave to amend to cure the deficiencies outlined in this order to the extent possible.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed herein, Plaintiff fails to state a claim and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can

do so in good faith.[2] See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). If Plaintiff chooses to file an amended complaint, that complaint can be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights. Iqbal, 556 U.S. at 678-79. Importantly, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is informed that the Court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be **complete in itself without reference to any prior pleading**. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015).

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;
3. The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length;
4. If an artificial intelligence ("AI") program was used in drafting the amended complaint, Plaintiff shall certify, under penalty of perjury, that Plaintiff used AI and has checked the citations to all cases, statutes, and other precedent, and that each citation exists and appropriately stands for the proposition Plaintiff makes;
5. If AI was not used in drafting the amended complaint, Plaintiff shall certify, under penalty of perjury, that Plaintiff did not use AI;
6. Should Plaintiff fail to certify regarding the use of AI (*i.e.*, either that Plaintiff did use AI or that Plaintiff did not use AI), **the Court will strike the amended complaint**; and

[2] In coming to this conclusion, the Court has considered Plaintiff's "supplemental facts." (ECF No. 5.)

7. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: **September 4, 2026**



STANLEY A. BOONE
United States Magistrate Judge