# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA S. BELL,<br>Plaintiff,<br>v.<br>MCNEIL & MEYERS ASSET MANAGEMENT GROUP, LLC, et al.,<br>Defendants. | Case No. 1:26-cv-02526-KES-SAB<br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION<br>**FOURTEEN-DAY DEADLINE** |

On April 3, 2026, Plaintiff Lisa S. Bell, who is proceeding *pro se* and *in forma pauperis*, filed a complaint against McNeil & Meyers Asset Management Group, LLC, Manny Villegas, and Jeff Hurley. (ECF No. 1.) As relevant here, on September 9, 2026, the Court screened the complaint and found that it failed to state a claim upon which relief could be granted. (ECF No. 6.) The Court gave Plaintiff 30 days to file an amended complaint to cure the identified deficiencies. (Id.) The time to file an amended complaint has passed, and Plaintiff has failed to file anything on the docket. Therefore, the Court will issue findings and recommendations recommending dismissal of this action for failure to state a claim, failure to prosecute, and failure to comply with a court order.

/ / /

/ / /

## I.

## SCREENING REQUIREMENT

The *in forma pauperis* statute provides that a court shall dismiss a case if, *inter alia*, the complaint is "frivolous or malicious," or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In determining whether a complaint fails to state a claim, a court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

Moreover, federal courts are under a duty to raise and decide issues of subject matter jurisdiction *sua sponte* at any time it appears subject matter jurisdiction may be lacking. Fed. R. Civ. P. 12; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). If the Court determines that subject matter jurisdiction is lacking, the Court must dismiss the case. Id.; Fed. R. Civ. P. 12(h)(3).

Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

/ / /

/ / /

/ / /

/ / /

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is Lisa S. Bell, who resides in Fresno, California. (ECF No. 1, p. 3.)[1] Defendant McNeil & Meyers Asset Management Group, LLC ("M&M") is a "Louisiana limited liability company" with its principal place of business in "Harahan, LA." (Id.) Defendants Manny Villegas ("Villegas") and Jeff Hurley ("Hurley"), upon information and belief, are "a principal, manager, and/or controlling person[s]" of M&M. (Id.) As a summary, Plaintiff alleges that Defendants engaged in a systematic pattern of illegal debt collection practices, including: (a) failing to validate a disputed debt; (b) failing to provide an assignment contract proving their authority to collect; (c) failing to provide a detailed accounting of the alleged debt; (d) continuing to report the debt after receiving notice of dispute; (e) ignoring Plaintiff's written cease and desist demand; (f) ignoring Plaintiff's demand for written communication; and (g) causing Plaintiff actual financial harm, including a higher interest rate on an automobile loan, a $500 down payment, and nine hard inquiries on her credit report—all of which would not have been required but for Defendants' illegal conduct. (Id. at p. 2.) In particular, Plaintiff focuses on two communications: 1) an instruction by M&M for Plaintiff to "'call Manny' (referring to Mr. Villegas) rather than providing written validation;" and 2) a letter dated October 3, 2025, from Hurley "refusing to delete the disputed debt." (Id. at p. 4.)

Plaintiff alleges that on or about May 30, 2025, Plaintiff co-signed an agreement with All Pro Bail Bonds for the benefit of Plaintiff's son. (Id.) One of the conditions of the surety bail bond states, "The obligation under this agreement is joint and severable." (Id.) At some point, Defendants began reporting a debt of $1,140 on Plaintiff's credit report as Account # U29538, and this debt is still reported as a collection account on Plaintiff's credit report. (Id.)

On August 21, 2025, Plaintiff filed a complaint with the Consumer Financial Protection Bureau, "disputing the debt and demanding validation under [Fair Debt Collection Practices Act ("FDCPA")] § 1692g, including: [t]he original contract with All Pro Bail Bonds; [t]he

---

[1] For clarity, the Court cites to the actual PDF page number. Though Plaintiff has utilized paragraph numbers, the numbers reset in each section.

assignment contract proving Defendants' authority to collect; [a] detailed accounting of the $1,140; [and] [p]roof the debt is within the statute of limitations." (Id. at p. 5.) Plaintiff also demanded that Defendants cease all communication with Plaintiff except to provide validation, pursuant to FDCPA § 1692c(c). (Id.) Specifically, Plaintiff stated:

> Pursuant to 15 U.S.C. § 1692c(c), I demand that you immediately cease all communication with me regarding this alleged debt, except as required by law to provide the requested validation or to confirm that collection efforts have ceased. This includes, but is not limited to, ceasing all phone calls, letters, or other forms of contact.

(Id.)

On August 26, 2025, Defendants responded to the dispute, providing the All Pro Bail Bonds contract. (Id.) However, Defendants failed to provide the assignment contract proving their authority to collect, a detailed accounting of the $1,140, and proof the debt was within the statute of limitations. (Id.)

On August 28, 2025, Plaintiff filed a second complaint with the Consumer Financial Protection Bureau, "demanding that Defendants cease reporting the unverified debt to credit bureaus. Plaintiff cited FDCPA § 1692e(8) and FCRA § 1681s-2(b) as the basis for her demand." (Id. at p. 6.)

On August 29, 2025, Defendants responded by "resending the same inadequate documents and instructing Plaintiff to 'call Manny directly" at a phone number provided. (Id.) Plaintiff again alleges that this "Manny" is Manny Villegas, the Defendant sued herein. (Id.) According to Plaintiff, "Defendants ignored Plaintiff's demand for written communication and instead directed her to call a company principal, demonstrating bad faith." (Id.)

On October 2, 2025, Plaintiff filed a third complaint with the with the Consumer Financial Protection Bureau, "reiterating her demand for removal due to imminent financial harm from an upcoming car purchase." (Id.) On October 3, 2025, Defendants sent Plaintiff a letter signed by Hurley, identifying himself as a "Sr. Asset Recovery Manager." (Id.) In the letter, Hurley admitted to receiving Plaintiff's credit bureau dispute, claimed to have verified that the debt was valid after reviewing with the creditor, refused to remove the debt account, and

invited Plaintiff to "call us at your convenience." (Id. at p. 7.) "Defendants sent Plaintiff a packet of documents that included the Conditions of Surety Bail Bond, payment history, and application. This packet contained the original bail bond agreement showing the debt was JOINT AND SEVERAL. However, Defendants FAILED TO PROVIDE the assignment contract proving their authority to collect." (Id.)

Plaintiff alleges that to date, Defendants still report this debt as a collection account on Plaintiff's credit report, which has affected Plaintiff's credit report. (Id.) On March 9, 2026, Plaintiff sent a "final demand letter" to Defendants demanding deletion of the account and $25,000 in damages. (Id. at p. 8.) On that same date, Plaintiff purchased a vehicle and alleges that she was forced to accept a financing plan that will now require her to pay over $10,000 in interest that should would not have had to pay with her previous credit score. (Id. at p. 9.) In support of her complaint, Plaintiff has provided extensive exhibits and citations to cases involving M&M. (Id. at pp. 9-11.)

On April 3, 2026, Plaintiff commenced this action bringing seven causes of action: 1) failure to validate, 15 U.S.C. § 1692g(b); 2) false or misleading representation, 15 U.S.C. § 1692e; 3) unfair practices, 15 U.S.C. § 1692f; 4) failure to cease communication, 15 U.S.C. § 1692c(c); 5) failure to investigate, 15 U.S.C. § 1681s-2(b); willful noncompliance, 15 U.S.C. § 1681n; and 7) violation of the Rosenthal Act, Cal. Civ. Code § 1788, *et seq*. (Id. at pp. 11-15.) Plaintiff seeks actual damages in the amount of $16, 921 and punitive damages in the amount of $20,000. (Id. at p. 15.)

**III.**

**DISCUSSION: FAILURE TO STATE A CLAIM**

**A. Validation of Debts, 15 U.S.C. § 1692g(b)**

Title 15 U.S.C. § 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, ***or the name and address of the original creditor***, and a

> copy of such verification or judgment, ***or name and address of the original creditor***, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Id. (emphasis added).

For her first claim, Plaintiff alleges that Defendants violated 15 U.S.C. § 1692g by failing to provide an assignment contract, a detailed accounting, and proof that the debt is within the statute of limitations. However, the § 1692g undermines this conclusion. The statute states that when a debt is disputed, a debt collector shall cease collection of the debt until the debt collector obtains verification, a copy of a judgment, or the name and address of the original creditor, which then must be mailed to consumer. Per Plaintiff's own allegations and exhibits, Defendants provided Plaintiff with the name and address of the original creditor: All Pro Bail Bonds. According to Plaintiff, Defendants even provided Plaintiff with the contract that she signed with All Pro Bail Bonds. Title 15 U.S.C. § 1692g(b) requires nothing more.

For these reasons, the Court finds that Plaintiff has not stated a claim under 15 U.S.C. § 1692g(b).

**B. False or Misleading Representations, 15 U.S.C. § 1692e**

Title 15 U.S.C. § 1692e, in relevant part, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt;
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information

> concerning a consumer.

Id.

The Court finds that Plaintiff has failed to allege facts to support a claim under § 1692e. Plaintiff does not deny that she entered into a contract with All Pro Bail Bonds, nor are there any allegations that she has paid off the debt or that the debt was otherwise satisfied. Thus, the reporting of the existence of the debt to Plaintiff is not a false representation. Though Plaintiff disputed her debt, Plaintiff has, in reality, alleged Defendants complied with 15 U.S.C. § 1692g(b), including providing a communication that the debt was verified. Finally, directing Plaintiff to "call Manny" is not a use of false representation or deceptive means to collect debt. Rather, the Court finds many of Plaintiff's allegations to be conclusory.

For these reasons, the Court finds that Plaintiff has not stated a claim under 15 U.S.C. § 1692e.

**C. Unfair Practices, 15 U.S.C. § 1692f**

Title 15 U.S.C. § 1692f provides, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Examples include the collection of any amount not subject to the agreement creating the debt; solicitation by a debt collector of any post-dated check for the purpose of threatening or instituting criminal prosecution, and communicating with a consumer regarding a debt by post card. Id. at §§ 1692f(1), (3), (7). Plaintiff does not explain or connect the allegations she has made that any of Defendants' actions would be unfair practices as defined under 15 U.S.C. § 1692f. For this reason, the Court finds that Plaintiff has not stated a claim under 15 U.S.C. § 1692f.

**D. Communication in Connection with Debt Collection, 15 U.S.C. § 1692c(c)**

Title 15 U.S.C. § 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;

> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Id.

The Court finds that Plaintiff has alleged that on August 21, 2025, Plaintiff sent Defendants a written cease and desist demand pursuant to § 1692c(c), instructing them to cease all communication except to provide validation. Plaintiff directs the Court to three instances where Plaintiff alleges Defendants violated § 1692c(c).

First, Plaintiff cites to the October 3, 2025 letter from Hurley. This theory fails. The letter, which Plaintiff has incorporated as Exhibit K, is dated October 3, 2025, and is in response to Plaintiff's credit bureau dispute. The letter states:

> After reviewing the account documents with the creditor we have verified that the debt is valid. Please review the documents concerning your account. You may contact us with any questions you may have. The account will remain on your credit file up to seven years as allowed by law. After your review if you would like to work out a solution to settle this matter please call us at your convenience so we may assist you with your credit file.

(ECF No. 1, p. 104.) The Court finds that Hurley's letter was responsive to Plaintiff's credit bureau dispute and indeed provides verification of Plaintiff's debt, which Plaintiff had requested.

Second, Plaintiff cites to Defendants continuing to report debt to credit bureaus. The Court finds that § 1692c(c) does not apply to this type of communication. Rather, it covers communications between a consumer and debt collector.

Third, Plaintiff cites to Defendants instructing Plaintiff to "call Manny" rather than honor her written-only communication request. Again, this is not covered under § 1692c(c). Plaintiff cites to no other statute or precedent that a debt collector must communicate in writing only based on a consumer's preference; in any event, that is what occurred by Plaintiff's own allegations (*i.e.*, the communication directing Plaintiff to call Manny was *in writing*). (ECF No. 1, p. 28.) That

Defendants gave Plaintiff another option of communication is not seemingly a violation of § 1692c(c).

For these reasons, the Court finds that Plaintiff has not alleged a claim under 15 U.S.C. § 1692c(c).

**E. Responsibilities of Furnishers of Information to Consumer Reporting Agencies, 15 U.S.C. § 1681s-2(b).**

Title 15 U.S.C. § 1681s-2(b) provides, "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall" conduct an investigation with various statutory requirements. Id.

Plaintiff states that Defendants violated § 1681s-2(b) by failing to conduct a reasonable investigation after receiving Plaintiff's disputes, including reviewing any assignment contract between All Pro Bail Bonds and Defendants. The Court finds Plaintiff's allegations to be largely conclusory. Plaintiff has not alleged that Defendants received notice under § 1681i(a)(2). Moreover, at no time has Plaintiff disputed that she was not liable to the debt at issue or that the debt was otherwise satisfied. For these reasons, the Court finds that Plaintiff has not stated a claim under § 1681s-2(b).

**F. Civil Liability for Willful Noncompliance, 15 U.S.C. § 1681n**

The Court notes that 15 U.S.C. § 1681n is the legal mechanism that allows for a private right of action for consumers. In other words, 15 U.S.C. § 1681n is the statute that provides that a consumer may bring a civil action and outlines the damages such a consumer may seek. Thus, § 1681n does not otherwise provide a basis for a claim.

**G. Compliance with Federal Provision, Cal. Civ. Code § 1788.17**

California Civil Code § 1788.17 provides:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title

> 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

Id.

The Court takes Plaintiff's position that by violating the FDCPA, Defendants have violated California's state-law counterpart, the Rosenthal Act. However, for the reasons articulated above, the Court found that Plaintiff has failed to state any claim under the FDCPA. In addition, the citation to § 1788.17 appears to be a statute incorporating compliance with Title 15. Plaintiff has not cited to statute or other authority, or otherwise alleged, how the Rosenthal Act provides a private right of action that would allow for enforcement of violations of federal compliance. For these reasons, the Court finds that Plaintiff has failed to allege a Rosenthal Act violation.

**H. Joint and Several Liability in California**

Based on the allegations in the complaint, there appeared to be some confusion on what "joint and several liability" means. For Plaintiff's benefit, the Court will again briefly outline the concept below.

"At common law, when multiple parties promised the same performance, they were presumed to be jointly obligated absent a clear indication otherwise." DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 820 (Cal. 2015), citing Farmers' Exchange Bank v. Morse, 129 Cal. 239, 243, 61 P. 1088 (Cal. 1900). "A joint and several contract is considered to be a contract that is made both separately with each promisor and jointly with all the promisors." Id. "Parties to a joint and several contract are thus bound jointly, so that they are liable for the entire obligation, and severally, so that each may be sued separately for the entire loss." Id.

## IV.

## FAILURE TO PROSECUTE

Federal Rule of Civil Procedure 41(b) permits courts to involuntarily dismiss an action when a litigant fails to prosecute an action or fails to comply with a court order. See Fed. R. Civ. P. 41(b); see also Applied Underwriters v. Lichtenegger, 913 F.3d 884, 889 (9th Cir. 2019) (citations omitted); Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) ("[T]he consensus among our sister circuits, with which we agree, is that courts may

dismiss under Rule 41(b) sua sponte, at least under certain circumstances."). Similarly, Local Rule 110 permits courts to impose sanctions on a party who fails to comply with a court order, and the procedural rules that govern this Court are to be "construed, administered and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Before dismissing an action under Fed. R. Civ. P. 41, a court must consider: (1) the public interest in expeditious resolution of litigation; (2) the Court's need to manage a docket; (3) the risk of prejudice to defendant; (4) public policy favoring disposition on the merits; and (5) the availability of less drastic sanctions. See Applied Underwriters, 913 F.3d at 890 (noting that these five factors "must be considered" before a Rule 41 involuntarily dismissal); Malone v. U.S. Postal Service, 833 F.2d 128, 130-31 (9th Cir. 1987) (reviewing the five factors and independently reviewing the record because the district court did not make finding as to each). But see Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (listing the same but noting the court need not make explicit findings as to each); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (affirming dismissal of *pro se* § 1983 action when plaintiff did not amend caption to remove "et al." as the court directed and reiterating that an explicit finding of each factor is not required by the district court).

Upon review of the above-stated factors, the Court finds dismissal of the action is warranted. The expeditious resolution of litigation is deemed to be in the public interest. Yourish v. California Amplifier, 191 F.3d 983, 990-91 (9th Cir. 1999). Turning to the second factor, the Court's need to efficiently manage its docket cannot be overstated. Given Plaintiff has failed to respond to the Court's September 4, 2026 order, the Court's time is better spent on other matters than needlessly consumed managing a case with a recalcitrant litigant. Indeed, "trial courts do not have time to waste on multiple failures by aspiring litigants to follow the rules and requirements of our courts." Pagtalunan v. Galaza, 291 F.3d 639, 644 (9th Cir. 2002) (Trott, J., concurring in affirmance of district court's involuntary dismissal with prejudice of habeas petition where the petitioner failed to timely respond to court order, noting "the weight of the docket-managing factor depends upon the size and load of the docket, and those in the best

position to know what that is are our beleaguered trial judges"). Delays have the inevitable and inherent risk that evidence will become stale or witnesses' memories will fade or be unavailable and can prejudice a defendant, thereby satisfying the third factor. See Sibron v. New York, 392 U.S. 40, 57 (1968). The Court will recommend that the instant dismissal be a dismissal without prejudice, which addresses the fifth factor.

This case cannot linger indefinitely on this Court's already overburdened docket. A dismissal of this action for failure to prosecute and failure to comply with court orders is in accord with Ninth Circuit precedent as well as precedent governing Rule 41 dismissals. It appears Plaintiff has abandoned this action, and Plaintiff's failure to respond to the Court's order warrants the sanction of dismissal without prejudice under the circumstances.

## V.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed herein, IT IS HEREBY RECOMMENDED that this case be dismissed without prejudice for failure to state a claim, failure to prosecute this action, and/or failure to comply with the Court's order, pursuant to Fed. R. Civ. P. 41 and Local Rule 110.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14)** days after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Objections, if any, shall not exceed **fifteen (15) pages**. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate [judge's] factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014), quoting Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **October 16, 2026**

STANLEY A. BOONE
United States Magistrate Judge